IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

WILLIAM W. LAWSON,

        Plaintiff,

V.                                                        CIVIL ACTION NO. 3:05-0693

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

**FINDINGS AND RECOMMENDATION**

        In this action, filed under the provisions of 42 U.S.C. § 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his application for supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

        Plaintiff filed his application on June 27, 2003, alleging disability as a consequence of mood swings, violent behavior and problems with concentration. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

        At the time of the administrative decision, plaintiff was thirty-nine years of age and had obtained a GED. His past relevant employment experience consisted of work as a farm laborer. In

his decision, the administrative law judge determined that plaintiff suffers from a "depressive disorder and anxiety disorder," impairments which he considered severe. Though concluding that plaintiff was unable to perform his past work,[1] the administrative law judge determined that he had the residual functional capacity for a limited range of work at all levels of exertion. On the basis of this finding, and relying on Rule 204.00 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. As the administrative law judge observed, plaintiff has not alleged any physical problems, and none are apparent from the record. Thus, he found plaintiff could perform work at the heavy level of exertion, and this finding is well-supported by the evidence.

Mentally, plaintiff testified he had quit drinking two years prior to the February 9, 2005 hearing. He also admitted that medication controlled his depression "for the most part" but apparently not his hallucinations as he stated he heard voices a couple times a day for a minute or so at a time. After hearing the voices, plaintiff asserted that he had to go lie down in a quiet place and cover his head and that he may stay isolated like this for as long as several hours. He also has what he called mood swings two or three times per month when he will suddenly get angry and may break things. Paxil and Seroquel, the medications plaintiff is prescribed, have helped him, but he cannot afford them, and sometimes the Prestera Center, where he is treated, does not have samples to give him.

---

[1]This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2]20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 4.

The evidence reflects treatment at Prestera commenced in early 2002 when plaintiff was diagnosed with alcohol dependence, marijuana dependence, and dysthymia. On March 14, June 12 and September 11, 2002, plaintiff underwent court-ordered treatment at Prestera's Addiction Recovery Center. He was discharged from this treatment on November 5, 2002 as having met the goals of the program.

There is no indication plaintiff received any treatment until he was seen back at Prestera again on October 27, 2003 reporting he had recently lost his job, was depressed, abusing alcohol and exhibiting increasingly violent behavior. Mental status evaluation revealed plaintiff was alert, cooperative and oriented with normal attention but a depressed mood, blunted affect and perceptual abnormalities such as paranoia and auditory hallucinations. The examiner diagnosed alcohol dependence and depression NOS and assessed a Global Assessment of Functioning ("GAF") of 52, consistent with moderate symptoms or moderate difficulty in social or occupational functioning.[3]

Plaintiff related to his therapist on November 6, 2003 that he had been sober for one month and hoped that treatment would help him stop drinking for good. The therapist felt a diagnosis of psychotic disorder NOS should be considered. Dr. Sohail Rana saw plaintiff for the first time on November 20, 2003 and diagnosed major depressive disorder, severe, with mood congruent psychotic features; alcohol dependence; and rule out anti-social personality disorder based on plaintiff's reported symptoms and this examiner's observations of psychomotor retardation, depressed mood and constricted affect, fair concentration and intact memory. Intellectual functioning was estimated as average. Plaintiff was prescribed Lexapro for depression and Zyprexa for

---

[3]See Diagnostic and Statistical Manual of Mental Disorders, 4th Ed., American Psychiatric Association, 1994 at 32.

perceptual disturbance and reported at his next visit that his mood had improved and the voices he heard had decreased "to a great extent." An increase in dosages of both medications resulted in further improvement with plaintiff reporting on March 18, 2004 that the voices were almost completely gone.

Plaintiff's treatment plan was continued until August 12, 2004 when he reported increased depressive symptoms, and Dr. Rana, noting he was still symptomatic despite taking "optimal" doses of Lexapro and Zyprexa, changed his medication to Paxil for depression and Seroquel for perceptual problems. This change resulted in improvement by plaintiff's report, but Dr. Rana increased the dosage of Seroquel. The higher dosage caused the voices to cease, according to plaintiff, although apparently not permanently because in December 2004 he again reported hearing them, although it was mostly at night. He also indicated he still drank occasionally. An increased dosage of Paxil resulted in further improvement in depressive symptoms, according to the most recent report from this physician in January 2005. Reports from plaintiff's therapist for the period from January 2004 through January 20, 2005 reflect his opinion that plaintiff's symptoms remained in the mild range, and his level of functioning was only mildly impaired. Plaintiff reported in June 2004 that he had been doing some farm work, and on January 20, 2005 he anticipated returning to this work in March.

Plaintiff also discussed working with Robert Martin, M.A., who evaluated him for the Commissioner on January 6, 2004. At that time, plaintiff reported he had worked in a tobacco field as recently as December 2003 and indicated he had been doing this type of work for six to seven years on a seasonal basis, which amounted to five to six months a year. Plaintiff also related he had

never been fired from a job and did not have a history of conflict with co-workers or supervisors but did have difficulty finding a job due to his criminal record.[4]

In terms of daily activities, plaintiff reported he could complete household chores, maintain his residence, manage finances, and do his own shopping, including making correct change. I.Q. test scores were consistent with low average intellectual functioning, but Mr. Martin felt they were an underestimate of plaintiff's abilities. WRAT-3 test scores were consistent with high school reading level, 6th grade spelling and 5th grade math abilities. The lower spelling and math scores were felt to be due to plaintiff's limited education.[5] Mental status exam revealed plaintiff was cooperative and interacted "in a socially appropriate manner" but had a depressed mood, moderately constricted affect, normal concentration, memory and persistence, and mildly deficient pace. The diagnosis was schizoaffective disorder, depressive type, and alcohol dependence, reportedly in early full remission.

A state agency medical advisor opined plaintiff would be moderately limited in his abilities to work in coordination with or proximity to others without being distracted by them, to accept instructions and respond appropriately to criticism from supervisors and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. The administrative law judge, after considering the evidence as a whole, determined that plaintiff would be limited to performing work with no more than routine instructions, very low social interaction, and no exposure to temperature extremes or bright lights.[6] These limitations are consistent with those expressed by the

---

[4]He related having "numerous" DUI arrests and had lost his drivers license.

[5]He reported being held back once in 6th grade, twice in 7th grade and quitting school after finishing 7th grade. He subsequently earned his GED.

[6]The avoidance of temperature extremes and bright lights was included based on testimony that plaintiff was sensitive to these circumstances, possibly due to the side effects of medication.

state agency psychologist, take account of the limitations plaintiff indicated he experienced due to depression, and are supported by the evidence.

While plaintiff alleged significant limitations on his activities due to mental problems, the administrative law judge, taking account of the evidence as well as his observations of plaintiff at the hearing, and noting inconsistencies between plaintiff's testimony and the medical evidence, concluded his credibility was only fair. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Finally, in response to hypothetical questioning which included plaintiff's age, education, work experience and a reasonably accurate profile of his functional capacity and overall medical condition, a vocational expert testified that there were significant numbers of heavy, medium, light and sedentary jobs in the national economy which he could perform.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebreeze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). In the present case, the evidence, though somewhat conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity. Under such circumstances, the decision of the Commissioner should be affirmed.

**RECOMMENDATION**

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted, and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provision of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. § 636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file this Findings and Recommendation and mail a copy of the same to all counsel of record.

ENTER: April 6, 2009

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE